EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* MARTÍN ESTEVES ROSADO, acusado y apelante.

*Número:* O-80-316      *Resuelto:* 27 de octubre de 1980

*Lorenzo O. Cabán Arocho,* abogado del peticionario; *Héctor A. Colón Cruz, Procurador General* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El peticionario fue denunciado de alegadamente perpetrar el delito de incesto contra su hija. En la vista preliminar ella se retractó de lo afirmado en una declaración jurada prestada previamente y exoneró de toda culpa a su progenitor. Su madre corroboró la variación y los motivos que la indujeron. El Ministerio Fiscal confrontó a la perjudicada con su previa declaración.

A base del contenido de la primera declaración, el juez determinó la existencia de causa probable. El acusado solicitó la desestimación, bajo la Regla 64(p) de Procedimiento Criminal, aduciendo que no se había determinado causa probable conforme a derecho. Declarada sin lugar, recurrió ante nos. Expedimos orden al Procurador General para que compareciera a mostrar causa por la cual no debería revocarse dicha resolución. [1]

La Regla 63 de las de Evidencia de 1979 rige la situación

---

[1] Le instamos a que discutiera la Regla 63 de las de Evidencia de 1979.

de autos. Su lenguaje refleja su impacto. Declara "admisible como excepción a la regla de prueba de referencia una declaración anterior de un testigo que está presente en el juicio o vista y sujeto a ser contrainterrogado en cuanto a la declaración anterior, siempre que dicha declaración fuere admisible de ser hecha por el declarante declarando como testigo".

■ A los fines de resolver este caso, no es necesario que pasemos juicio sobre la aplicabilidad o no de ese nuevo cuerpo de reglas a los procedimientos en vista preliminar.(²) Nos explicamos. De estimarse que *no* son de aplicación, nada obstaría a que se utilizara la declaración jurada anterior de la testigo como evidencia de la verdad de lo dicho en ella para determinar causa probable, pues no aplicaría con todo rigor la regla general de la exclusión de prueba de referencia.(³) Por otro lado, de aplicar, como veremos, entonces operaría la excepción que establece la Regla 63. Notamos, además, que el problema de la admisibilidad o inadmisibilidad de una declaración anterior de un testigo que está presente en el juicio o vista en que se quiere presentar la declaración, se centra sobre iguales consideraciones tanto en el juicio como en la vista preliminar.(⁴) Por ende, no tendría sentido revocar una determinación de causa probable en vista preliminar, por haberse utilizado evidencia que sería admisible en juicio.

---

(²) El "Proyecto de Reglas de Evidencia que presentara al Tribunal Supremo el Comité de Reglas de Evidencia de la Conferencia Judicial disponía expresamente que las reglas serían aplicables en los procedimientos de vista preliminar. Consideramos que no fue accidental la exclusión de una disposición expresa de aplicabilidad a [la] vista preliminar". *Análisis Editorial*, I *Práctica Procesal Puertorriqueña: Evidencia*, pág. 94. Sobre la aplicabilidad o no de las reglas de evidencia a procedimientos de vista preliminar, véase: Secretariado de la Conferencia Judicial, *Vista Preliminar: Informe*, Sexta Sesión Plenaria (Nov. 1979), págs. 78–84.

(³) Regla 61 de Evidencia, 32 L.P.R.A., Ap. IV.

(⁴) Podría argüirse que al utilizar la Regla 63 las palabras "juicio o *vista*", queda incluida la vista preliminar. Sin embargo, "vista" puede referirse a cualesquiera otros procedimientos que pueden tener lugar dentro de un caso criminal o civil.

# I

La aprobación de esta Regla 63 modifica la doctrina prevaleciente, según la cual las manifestaciones anteriores de un testigo, incompatibles con su testimonio en el tribunal, sólo podían ser utilizadas para impugnar su credibilidad —por la parte que lo presentó o la contraria— ([5]) y no podían tomarse como prueba de la verdad de lo aseverado en ellas, por estimarse que constituirían prueba de referencia en ausencia de oportunidad de la parte contra quien se presenta de contrainterrogar al testigo en el momento en que hizo la declaración, ([6]) y por no haber estado el declarante sometido a juramento ni haber sido observado su comportamiento (*demeanor*).([7]) Ello requería una instrucción al jurado al efecto de que sólo se considerarán las manifestaciones anteriores incompatibles, para fines de impugnación.([8])

■ Al presente, las autoridades y jurisdicciones que han optado por ampliar el ámbito de utilización de las declaraciones anteriores de un testigo como evidencia, ([9]) lo han hecho convencidos de que la disponibilidad en el juicio del testigo para ser contrainterrogado en cuanto a lo declarado

---

([5]) Arts. 518 y 521 de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2148 y 2151. Véanse: *Pueblo* v. *Cruz*, 62 D.P.R. 831 (1944); *Pueblo* v. *Arroyo Núñez*, 99 D.P.R. 842 (1971).

([6]) *Pueblo* v. *Pacheco*, 83 D.P.R. 526, 538 (1961); *Cintrón* v. *A. Roig, Sucrs.*, 74 D.P.R. 1028 (1953); *Pueblo* v. *Colón*, 52 D.P.R. 413 (1937).

([7]) Véase: M. H. Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of Federal Rules of Evidence, 801(d)(1)(A), 613, and 607*, 75 Mich. L. Rev. 1565, 1573 (1977).

([8]) E.g., *Pueblo* v. *López Reyes*, 109 D.P.R. 379 (1980); *Pueblo* v. *Hernández Santiago*, 97 D.P.R. 522 (1969); *Pueblo* v. *Verdejo Meléndez*, 88 D.P.R. 207 (1963).

([9]) Wigmore, McCormick y el Profesor Morgan favorecen la admisión de tales declaraciones como evidencia de la verdad de lo manifestado en ellas. Véase 4 *Weinstein's Evidence*, sec. 801(d)(1) [01], 801-77, nota 3. Dieciocho estados han adoptado reglas que admiten las declaraciones anteriores de testigos como evidencia sustantiva, en diferente extensión. F. F. Bein, *Prior Inconsistent Statements: the Hearsay Rule, 801(d)(1)(A) and 803(24)*, 26 UCLA L. Rev. 967, 968 (1979).

anteriormente, coloca al juzgador en una posición satisfactoria para evaluar la veracidad y confiabilidad de ambas versiones del testigo —en caso de ser inconsistentes— ya que puede observar su comportamiento (*demeanor*)[10] al ser confrontado con la declaración anterior y oír cualesquiera explicaciones que tenga que ofrecer en cuanto a la inconsistencia. En este sentido, es de rigor aclarar que la Regla 63 sólo aplica cuando el declarante está ocupando la silla testifical, durante, o luego de haberse cubierto su testimonio directo y estando sujeto al contrainterrogatorio.

En cuanto a la declaración anterior, se resta importancia a la existencia del juramento, contrainterrogatorio y observación, ya que el primero ha perdido prestigio como elemento garantizador de veracidad y se ha concluido que la oportunidad posterior de contrainterrogatorio más la observación del testigo, como hemos expuesto, suplen la ausencia de esos factores al momento de hacerse la declaración. Se estima también que las deposiciones anteriores de un testigo tienden a ser más confiables porque, por lo general, han sido hechas en fecha más cercana a los hechos, cuando la memoria es fresca y ha habido menos oportunidad de intervención de influencias indebidas en el testimonio del testigo. Igualmente ha animado el cambio doctrinal cierta desconfianza de que el jurado, verdaderamente, por motivo de la instrucción que se les imparte, pueda realmente limitar su consideración de la declaración anterior como evidencia impugnatoria solamente, es decir, con fines de credibilidad, sin que tome como cierta la declara-

---

[10] El siguiente comentario del juez Learned Hand ha sido extensamente citado en apoyo de la proposición de que la observación del comportamiento del testigo en el juicio en que se presenta la declaración anterior ofrece una base satisfactoria para la debida apreciación de esa evidencia:

"Si, de todo lo que el jurado ve del testigo, ellos pueden concluir que lo que éste dice ahora no es la verdad, sino lo que había dicho antes, de todos modos están decidiendo sobre lo que ven y oyen de esa persona y en el tribunal." *Di Carlo* v. *United States*, 6 F.2d 364, 368 (1925). E.g., Graham, *op. cit.*, pág. 1569.

ción anterior. (¹¹) Entre los propósitos de admitir declaraciones anteriores de un testigo, se ha esbozado la ventaja que representa para enfrentarse con testigos "renegados" u hostiles que cambian su declaración, desfavoreciendo a la parte que lo llamó al estrado. (¹²)

Las objeciones principales a la admisibilidad de las declaraciones anteriores como prueba sustantiva se hacen casi siempre al amparo del derecho de confrontación. Ciertamente, toda prueba de referencia admitida, en algún grado menoscaba este derecho. Así, pues, en estricta lógica, todas las excepciones a la prueba de referencia, de tan antigua estirpe, vulneran en cierta medida la confrontación. Por ende, si llevamos el argumento a su última consecuencia racional —en el sentido de que cualquier perjuicio al derecho de confrontación invalida la admisibilidad de la evidencia en cuestión— no habría excepciones a la regla general de exclusión de prueba de referencia.

■ Hemos de rechazar esta línea de pensamiento. La admisibilidad de declaraciones anteriores de un testigo que está ocupando la silla testifical, sujeto a contrainterrogatorio, es una de las instancias en que menos se vulnera el derecho de la confrontación. (¹³)

---

(¹¹) C. T. McCormick, *Handbook of the Law of Evidence,* 2da ed., St. Paul, Minnessota, West Pub. Co., 1972, sec. 251, págs. 601–04.

(¹²) Tal ventaja fue expuesta en el comentario a la Sec. 1235 del Código de Evidencia de California, que admite como evidencia sustantiva las declaraciones anteriores inconsistentes. También se hizo referencia a ella al aprobarse la Regla Federal de Evidencia, 801(d)(1)(A). Véase, Saltzburg y Redden, *Federal Rules of Evidence Manual,* 2da ed., Charlottesville, Virginia, The Michie Company, 1977, pág. 478. En general, C. T. McCormick, *The Turncoat Witness: Previous Statements as Substantive Evidence,* 25 Tex. L. Rev. 573 (1947).

(¹³) A modo de un breve análisis comparativo, observamos: (a) las excepciones de la Regla 65 no están condicionadas a la comparecencia al tribunal del declarante y ni siquiera a la disponibilidad del declarante para comparecer, y (b) las excepciones de la Regla 64 están condicionadas a la no disponibilidad del testigo. Por el contrario, la Regla 63 requiere que el declarante comparezca como testigo. La falta de confrontación es aquí mínima.

## II

■ Nuestra regla recoge una versión más amplia que la federal, al apartarse de la visión prevaleciente, pues admite, para probar la verdad de lo aseverado en ella, todo tipo de declaración anterior de un testigo, sin limitar tal admisión a determinada clase de declaraciones, como en la regla federal 801 (d) (1). En efecto, esta última sólo reconoce la admisibilidad de cierto tipo de declaraciones anteriores *inconsistentes*, así como declaraciones anteriores *consistentes* —ofrecidas para refutar alegación de fabricación o de motivo impropio— y declaraciones anteriores con relación a la *identificación de una persona.* ([14]) En cuanto a las declaraciones anteriores del testigo que sean inconsistentes con su testimonio ante el tribunal, el Congreso insertó el requerimiento de que la declaración anterior hubiese sido prestada "bajo juramento, so pena de perjurio y en juicio o vista u otro procedimiento formal, o en una deposición". Regla 801 (d) (1) (A). Incluso se llegó a sugerir en el seno de la Cámara, pero no prosperó, que se exigiera, además, que el declarante hubiese estado sujeto a contrainterrogatorio cuando hizo la anterior. ([15]) Nuestra Regla 63 no contiene tales limitaciones.

---

([14]) Para comentarios acerca de la Regla federal, véanse: E. J. Silbert, *Federal Rule of Evidence 801(d)(1)(A)*, 49 Temple L.Q. 880 (1976); M. Reutlinger, *Prior Inconsistent Statements: Presently Inconsistent Doctrine*, 26 Hastings L.J. 361 (1974); J. M. Stalmack, *Prior Inconsistent Statements: Congress Takes a Compromising Step Backward in Enacting Rule 801(d)(1)(A)*, 8 Loy. Chi. L.J. 251 (1977); M. H. Graham, *op. cit.;* W. J. Blakey, *Substantive Use of Prior Inconsistent Statements under the Federal Rules of Evidence*, 64 Ky. L.J. 3 (1975). F. F. Bein, *op. cit.*, 26 UCLA L. Rev. 967 (1979).

En cuanto a jurisprudencia federal reciente sobre estos tres tipos de declaraciones anteriores, véanse: *United States* v. *Coran*, 589 F.2d 70 (1978); *United States* v. *Brighton Bldg. & Maintenance Co.*, 598 F.2d 1101 (1979), declaraciones inconsistentes; *García* v. *Watkins*, 604 F.2d 1297 (1979); *United States* v. *Baron*, 602 F.2d 1248 (1979), declaraciones consistentes; y declaraciones sobre identificación, *United States* v. *Cueto*, 611 F.2d 1056 (1980).

([15]) Sobre el particular, consúltese el historial de la Regla, que se recoge en Saltzburg y Redden, *op. cit.*, pág. 470 *et seq.* Véanse además,

Por ende, todo lo que es admisible bajo la regla federal 801 (d) (1) es admisible bajo nuestra Regla 63; pero no a la inversa.

Creemos que las limitaciones establecidas en la regla federal no son necesarias. Aparte de los problemas que ella genera respecto a la determinación de qué debe entenderse por "inconsistencia", ([16]) la adición de tales requisitos emasculó la utilidad de la regla y con ello se negaron los propios razonamientos que llevaron a apartarse de la norma tradicional. ([17])

Es interesante conocer ciertos temores que motivan la regla federal. La posibilidad de fabricación o procuración de declaraciones anteriores para ser utilizadas en juicio y presentar un mejor caso o "atrapar" al testigo si falla, o de que se alentaran otras "malas prácticas", así como el convencimiento de que de ese modo se aseguraba la mejor evaluación de la confiabilidad o veracidad de la declaración, por parte del juzgador —por tener ante sí dos versiones distintas que examinar, mientras observa al testigo explicar las inconsistencias o inexactitudes al ser repreguntado— llevaron al Comité de Reglas del Tribunal Supremo federal a limitar la permisibilidad de admitir declaraciones anteriores con fines sustantivos a las inconsistentes. ([18]) La adición por el Congreso de los requisitos vistos, conllevó aún a una mayor restricción, al dar paso sólo a aquellas declaraciones que hubiesen sido hechas en forma de testimonio, ([19]) excepto en cuanto no

Blakey, *op. cit.*, págs. 6–10; 4 *Weinstein's Evidence*, 801-11 a 801-43; Silbert, *op. cit.*, págs. 883, 884; Reutlinger, *op. cit.*, págs. 378–380; Stalmack, *op. cit.*, págs. 252–255.

([16]) 4 *Weinstein's Evidence*, Secs. 801 (d) (1) (A) [01], 801-87 a 801-90; Silbert, *op. cit.*, págs. 884–886; Stalmack, *op. cit.*, págs. 260–265; Blakey, *op. cit.*, pág. 13 y ss.

([17]) Bein, *op. cit.*, págs. 977–978.

([18]) 4 *Weinstein's Evidence*, Secs. 801 (d) (1) (A) [01], 801-79 a 801-80, 801-83; Saltzburg y Redden, *op. cit.*, pág. 478.

([19]) Graham, *op. cit.*, págs. 1566, 1583.

se requirió que estuvieran sujetas a contrainterrogatorio al hacerse.[20] Con ello se pretendió asegurar que no hubiera controversia respecto a que la declaración previa fue prestada y que el testimonio anterior estuviese rodeado de suficientes garantías de veracidad.[21]

Nos parece de mayor consistencia lógica[22] nuestra regla, al declarar admisibles todas las declaraciones anteriores, siempre que exista la oportunidad de contrainterrogar al declarante en el juicio en que se ofrece la declaración. Si se confía verdaderamente en que el contrainterrogatorio en esa etapa posterior —con el testigo observado por el juzgador y sujeto a juramento (cualquiera que sea su importancia, si alguna, para garantizar veracidad)— es instrumento suficiente para excluir los peligros que justifican la regla de exclusión de prueba de referencia, no vemos la necesidad de limitar la admisibilidad sustantiva de las declaraciones anteriores a sólo las inconsistentes hechas con carácter testimonial.

Ahora bien, reconocemos lo debatible que es la premisa más importante en que descansa la regla, a saber, que el contrainterrogatorio posterior suple la falta que hubo al momento de hacerse la declaración previa.[23] En realidad,

---

[20] La eliminación del requisito de contrainterrogatorio en la declaración anterior respondió a la deseabilidad de que fueran admisibles también testimonios anteriores prestados ante un gran jurado, donde no se provee contrainterrogatorio, siguiendo en ello la norma trazada por el Segundo Circuito en *United States* v. *De Sisto*, 329 F.2d 929, *cert. den.* 377 U.S. 979 (1964), y *United States* v. *Cunningham*, 446 F.2d 194 (1971). Véanse Saltzburg y Redden, *op. cit.*, pág. 482; 4 *Weinstein's Evidence*, 801-11 a 801-13, 801-81.

[21] *Id.* Se ha argüido que tales requisitos pueden ser eficaces en cuanto a lo primero, mas no en cuanto a lo segundo. Bein, *op. cit.*, págs. 977–78; Graham, *op. cit.*, págs. 1582–1583.

[22] Igual posición se expresa respecto a la anterior Regla 63.1 de las Uniformes, en Reutlinger, *op. cit.*, págs. 378–379.

[23] La piedra angular sobre la cual debe girar todo debate en torno a lo que constituye prueba de referencia, es la oportunidad de contrainterrogar. Reutlinger, *op. cit.*, pág. 364; Bein, *op. cit.*, págs. 984–85; Graham, *op. cit.*, pág. 1569; McCormick, *op. cit.*, 25 Tex. L. Rev. 573, 576 (1947).

ambas posiciones presentan buenos argumentos. (²⁴) Han sido fructíferas, también, las discusiones acerca de si admitir con efecto sustantivo declaraciones anteriores se presta a malas prácticas por parte de los abogados, de procurarse declaraciones para reforzar sus testigos, de si en la transcripción y otros procesos de recoger la declaración puede haber errores,

---

Nuestra Regla 60 utiliza como criterio el que la declaración se haya hecho fuera del tribunal y sea traída para probar la verdad de lo aseverado en ella. De ahí que la admisibilidad de las declaraciones que nos ocupan *se establezca como excepción*.

(²⁴) Son múltiples los aspectos: que no es lo mismo contrainterrogar a un testigo en determinado momento, que luego, cuando puede fallarle su memoria por el paso del tiempo y ha tenido más oportunidad para fortalecer o endurecer su testimonio, y que conviene más al contrainterrogante el testimonio "caliente"; que no tiene el mismo impacto destruir a un testigo en el tribunal y obtener su retracto ante el jurado, que ahondar sobre una retractación que ya ha ocurrido; que el abogado defensor no se encuentra en una posición deseable para contrainterrogar a un testigo que lo que ha hecho es favorecerlo con su testimonio, que si lo ataca con los mecanismos usuales ayudará más a que no se crea la declaración en el tribunal, pero sí la anterior; que un contrainterrogatorio presupone que el que va a ser preguntado afirme algo que el contrainterrogante prefiere que niegue, o niegue algo que el contrainterrogante prefiere que afirme; que la tarea fácil que aparenta ser la que se presenta para la defensa cuando el testigo de cargo ya lo ha favorecido, más bien le hará pelear con el fantasma de la declaración anterior, que se hará indestructible.

En contra de esos argumentos, se aducen los siguientes: que el testimonio de un testigo que se ha retractado no se ha endurecido, sino que más bien se ha ablandado hasta ser rechazado por el testigo, que en tales circunstancias la defensa no tiene que esperar mayor éxito del contrainterrrogatorio si ya el testigo lo ha favorecido; que siempre se puede presentar evidencia extrínseca para atacar la declaración anterior o atacarla con un contrainterrogatorio que saque a relucir las inconsistencias o inexactitudes; que los casos que se ofrecen como ejemplo de lo inefectivo del contrainterrrogatorio a posteriori, precisamente han demostrado que lo que ocurre es lo contrario; que al testigo puede preguntársele acerca de las circunstancias en que hizo la declaración; que las diferencias que señalan los ortodoxos con respecto al momento en que se realiza el contrainterrogatorio se ciernen mayormente sobre el "ideal" de contrainterrogatorio en que los testigos son destruidos espectacularmente, lo que dista de la realidad en la mayoría de los casos; que el problema de que transcurra el tiempo y falle la memoria del testigo puede siempre ocurrir en otros tipos de situaciones, pues los juicios tienden a tardar tras el acaecimiento de los hechos. Véase, Bein, *op. cit.*, págs. 1002–1004; Graham, *op. cit.*, págs. 1569 a 1572; Reutlinger, *op. cit.*, págs. 370–376.

si puede mediar falsificación, alteración o fraude, y en cuanto a que las declaraciones pueden haber sido tomadas en circunstancias que arrojen dudas de su veracidad, como las presiones al testigo para que mienta o haberle llevado a decir lo que se quería, por medio de preguntas sugestivas.[25]

Por último, notamos la contundencia de los señalamientos respecto a que no es jurídicamente aceptable como generalización, que la oportunidad de contrainterrogar en el juicio sobre la declaración anterior suple la falta de éste al prestarse la misma. En efecto, la eficacia de esa oportunidad depende en cada caso de reacciones del testigo hacia la declaración y sus respuestas sobre el particular. Aparte de la situación en que se acepta la declaración y la certeza de lo aseverado en ella, que no representaría problemas, la gama de posibilidades es significativa: (a) aceptar que se hizo la declaración, pero rechazar o negar su contenido; (b) admitir haberla prestado, pero aseverar que no se recuerdan los hechos allí vertidos o su base perceptiva; (c) reconocer que se prestó, pero alegar que parte era cierta y parte falsa, o que en aquel momento se creían esos hechos como ciertos, pero que el testigo se ha dado cuenta de que sus percepciones estuvieron erradas; y (d)

---

[25] Se podría replicar que no son precisamente malas prácticas en todo caso el procurar obtener declaraciones anteriores de un testigo propio. Más bien, podría ello tildarse de diligencia del abogado en muchos casos. Además, la posibilidad de malas prácticas está presente aun bajo el uso limitado de manifestaciones inconsistentes para fines de impugnar, pues puede ocurrir que, con esperanzas de que el jurado pueda darle valor sustantivo, se aproveche cualquier inconsistencia, aunque sea mínima, para presentarlas. Más aún, la fabricación podría detectarse a través del contrainterrogatorio en el juicio en que se presenta la declaración o se puede presentar evidencia al respecto, al igual que si la declaración se ha obtenido en circunstancias sospechosas o de poca confiabilidad, cosa que negarían los que favorecen la posición ortodoxa. Además, siempre impresiona mejor un caso de una parte que lleve a un testigo a declarar personalmente sin guiarlo sobre la base de una declaración anterior. En cuanto a las circunstancias sobre posible alteración, falsificación o fraude, éstas también pueden ser objeto de prueba. En el caso de las declaraciones escritas, existen técnicas adecuadas para determinar tales anormalidades. Véanse, en general: McCormick, *op. cit.*, secs. 251, 603; McCormick, *op. cit.*, 25 Tex. L. Rev. 573, 586-587 (1947); Bein, *op. cit.*, págs. 972-73.

negar el hecho mismo de haber prestado tal declaración. En cada una de esas posibilidades, sin pretender agotarlas, creemos que lo crucial es si la contestación del testigo permite preguntarle sobre sus percepciones y memoria relativa a los hechos que declaró anteriormente, para evaluar esas funciones síquicas del declarante. Claramente, esa posibilidad se reduce cuando el testigo alega no recordar o que la declaración es falsa, por ejemplo. [26] Valga señalar en este punto que en la jurisdicción norteamericana los posibles excesos que bajo la Regla 801 (d) (1) (A) pueden producirse atañen a la posible obstaculización de las vías o avenidas de contrainterrogatorio. Para tales situaciones extremas, la Enmienda Sexta de la Constitución federal, en su cláusula relativa al derecho del acusado de confrontar los testigos de cargo, [27] puede proporcionar un freno. [28]

---

[26] Bein, *op. cit.*, págs. 974–75, 979–80, 995 *et seq.* Esta autora reconoce, sin embargo, la posibilidad de que en algunos casos, a pesar de que el testigo alegue ser falso lo declarado anteriormente, haya alguna medida de contrainterrogatorio, como en todas las situaciones. Señala que en tales casos pueden obtenerse explicaciones del testigo en cuanto a por qué mintió en la declaración anterior y ahora la rechaza. Pág. 997. Véanse también 4 *Weinstein's Evidence,* secs. 801 (d) (1) (A) [01] a 801 (d) (1) (A) [07]; Stalmack, *op. cit.,* págs. 261–262.

[27] En Puerto Rico, el Art. II, Sec. 11 de nuestra Constitución provee que "[en] todos los procesos criminales, el acusado disfrutará del derecho . . . [de] carearse con los testigos de cargo [y de] obtener la comparecencia compulsoria de testigos a su favor". La enmienda mencionada en el texto, en cuanto garantiza el derecho de confrontación, ha sido aplicada a los Estados de la Unión en *Pointer* v. *Texas,* 380 U.S. 400 (1965).

[28] En *California* v. *Green,* 399 U.S. 149 (1970), el Tribunal Supremo revocó al de California, que había declarado inconstitucional la sección 1235 del Código de Evidencia de ese estado. Estimó que los requisitos exigidos en esa sección para admitir las declaraciones anteriores inconsistentes de un testigo, a saber, presencia del testigo en el juicio en que se quiere presentar la declaración para que esté sujeto a contrainterrogatorio en torno a la misma, bajo juramento y observado su *demeanor,* hacían que la misma no fuese inconstitucional de su faz. Sin embargo, dejó en *quaere* si en el caso de un testigo *amnésico,* por no poder evaluarse sus percepciones respecto a los hechos que vertió en la declaración anterior, podría violarse el derecho del acusado de confrontarse con los testigos en su contra.

El Tribunal Supremo de Estados Unidos ha dejado claramente sentado que la regla que excluye la prueba de referencia y la cláusula constitucional

## III

Al evaluar el caso de autos, notamos que se cumplieron cabalmente las exigencias de la Regla 63, a saber, la presencia y deposición de la testigo en la vista, sujeta a ser contrainterrogada en cuanto a su declaración anterior.([29]) Ello brindó al juzgador la oportunidad de observarla narrar las circunstancias en que prestó la declaración previa([30]) y ad-

que establece el derecho de confrontarse con los testigos de cargo, aunque protegen valores similares, no son coextensivas, lo cual significa que no todo lo que es admisible por no constituir prueba de referencia o por calificar bajo alguna excepción a la regla, necesariamente aguanta los embates de un planteamiento que reclama tal derecho. Véanse: *Dutton* v. *Evans*, 400 U.S. 74 (1970); y *United States* v. *Medico*, 557 F.2d 309, n. 4, *cert. den.* 434 U.S. 986 (1977). Respecto a la relación entre la regla de exclusión y la cláusula constitucional *United States* v. *King*, 552 F.2d 833 (9th Cir. 1976), *cert. den.* 430 U.S. 966 (1977). En *United States* v. *Wright*, 588 F.2d 31 (2nd Cir. 1978), se resuelve que independientemente de si una declaración o manifestación constituye prueba de referencia o cae dentro de las excepciones, hay que juzgar caso por caso si hay alguna violación al derecho de confrontación; en *United States* v. *Papia*, 560 F.2d 827 (7th Cir. 1977), se dijo que cualquier declaración que califique bajo una de las excepciones a la regla de exclusión de prueba de referencia, se admite sin problemas constitucionales; y en *United States* v. *Haynes*, 560 F.2d 913 (8th Cir.), *cert. den.* 434 U.S. 974 (1977), se decide que las declaraciones que califiquen para admisión a pesar de la regla de prueba de referencia, no presentan problemas constitucionales, excepto en circunstancias poco usuales. Saltzburg & Redden, *op. cit.*, pág. 188 (Supp. 1979); Graham, *The Confrontation Clause, the Hearsay Rule and The Forgetful Witness*, 56 Tex. L. Rev. 151 (1978); McCormick, *op. cit.*, secs. 252, 604; Bein, *op. cit.*, pág. 976; Silbert, *op. cit.*, págs. 881–882; Blakey, *op. cit.*, págs. 13–16; Stalmack, *op. cit.*, págs. 259–263.

En Puerto Rico, véase *Pueblo* v. *López Reyes*, supra, en donde consideramos la admisibilidad de la declaración anterior con fines de *impugnación*, dejando sin resolver lo relativo a evidencia sustantiva. El resultado debe ser el mismo bajo la Regla 63. El tribunal debe hacer una determinación, en ausencia del jurado, bajo la Regla 9, en torno a si la alegada falta de recuerdo es genuina o fingida. Si decide que es genuina, la declaración anterior no debe ser admitida. Si decide que es un subterfugio para no declarar, la declaración anterior debe admitirse bajo la Regla 63.

([29]) Se cumplió, además, con el requisito de que su declaración hubiese sido admisible de haber sido hecha por ella como testigo, lo cual asegura que lo atestado fue con conocimiento personal de los hechos.

([30]) Se le hicieron unas preguntas a las que ella respondió mientras una persona transcribía lo que ella decía. Una vez preparada, se le dio para que la leyera y luego la firmó.

vertir cuando en el contrainterrogatorio explicó también los motivos que alegadamente la llevaron a acusar falsamente a su padre, a saber, dinero que le había ofrecido quien supuestamente fue el causante de la pérdida de su virginidad para que imputara ese hecho a su progenitor.

Por otro lado, el abogado de la defensa tuvo y consumió su turno de preguntas. Lo dirigió a hacer más evidente la retractación de la testigo y la exculpación que hizo del acusado, así como a hacer constar claramente que no debía creerse la declaración anterior, pues la testigo aceptaba haber mentido en ella. Aun así, no logró convencer al juez de que descartara la declaración anterior. (³¹) Si no logró tal objetivo, fue porque, al apreciar integralmente el cuadro que tenía ante sí el juzgador, le extrañó sobremanera las respuestas de madre e hija a sus preguntas sobre si el acusado en algún momento les había increpado por estar cometiendo una injusticia contra él, al éstas contestar varias veces en la negativa, para al final —ante su asombro— la testigo pretender decir que su padre la había regañado. Esta apreciación queda robustecida al notar que la joven, tras afirmar que el padre "no fue", realizó una narración casi exacta de lo vertido en la declaración anterior, de forma tal que parecía estar narrando más bien algo que hubiese acontecido en realidad.

■ Nada de lo expuesto prejuzga los méritos del caso en etapa posterior. Simplemente hemos señalado factores que razonablemente pudieron llevar al magistrado a concluir que la testigo pudo haber dicho la verdad en la declaración hecha fuera del tribunal, asunto a ser dirimido en un juicio. Nues-

---

(³¹) Véase: Comment, *Prior Inconsistent Statements as an Exception to the Hearsay Rule: An Analysis of People v. Johnson,* 6 San Diego L. Rev. 92, 96 (1969). En el citado comentario se concluye en igual sentido con respecto al contrainterrogatorio realizado por la defensa en el caso a que se refiere su título. En dicho caso, de incesto, madre e hija se retractaron del testimonio prestado ante gran jurado en que se inculpa al esposo y padre. El contrainterrogatorio produjo frutos similares a los que hemos descrito.

tro fallo sólo dispone del aspecto referente a la corrección de la utilización de la declaración jurada como evidencia sustantiva para fines de satisfacer el grado de evidencia necesaria para una determinación de causa probable en vista preliminar. *Pueblo* v. *López Camacho*, 98 D.P.R. 700 (1970), y *Vázquez Rosado* v. *Tribunal Superior*, 100 D.P.R. 592 (1972). No nos pronunciamos en cuanto a la suficiencia de esa prueba, por sí sola, para sostener una convicción que como cuestión de debido procedimiento exige prueba más allá de duda razonable. (32)

*Se dictará sentencia confirmando la resolución recurrida.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Díaz Cruz concurren en el resultado sin opinión.

---

(32) La distinción entre la admisibilidad y la suficiencia a estos fines ha sido destacada en contestación a la preocupación de los que se oponen a admitir con efecto sustantivo las declaraciones anteriores de los testigos de que pueda producirse una convicción tan solo sobre la base de esta clase de evidencia. Véase, del historial de la Regla federal, el *Informe del Comité de lo Judicial del Senado*, que se opone a los requisitos que quería incluir la Cámara, recogido en Saltzburg y Redden, *op. cit.*, págs. 487–488. En *California* v. *Green*, supra, se reconoció que "consideraciones de debido procedimiento, completamente aparte de la Cláusula de Confrontación, podrían prevenir la obtención de convicciones cuando una base evidenciaria confiable falta por completo. . .". (Págs. 163–64, nota 15.)

Véanse también, 4 *Weinstein's Evidence*, sec. 801 (d) (1) (A) [01], págs. 801-89; Blakey, *op. cit.*, págs. 20 a 24; Stalmack, *op. cit.*, págs. 267 a 271. Estos autores reconocen, sin embargo, y con razón, la imposibilidad de establecer una norma según la cual nunca una declaración anterior de un testigo admitida con efecto sustantivo pueda ser suficiente para una convicción. Todo dependerá de las circunstancias en cada caso. Con gran persuasión, por otro lado, se ha señalado que no se ve el porqué de la preocupación de algunos de los que impulsan la admisión sustantiva de este tipo de declaraciones con que pueda ocurrir una convicción sobre la base de solo esa evidencia, si de verdad se considera que ese tipo de declaraciones, al requerirse presencia del testigo para ser preguntado y observado, no presenta los peligros de la prueba de referencia. Bein, *op. cit.*, págs. 978–979.